**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,           )
                                    )
              Plaintiff,            )
                                    )
v.                                  )           Case No. CR-25-72-D
                                    )
JAMES ALVIN HUDSON,                 )
                                    )
              Defendant.            )

## <u>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER</u>

Before the Court is Defendant James Alvin Hudson's Motion to Suppress Traffic Stop [Doc. No. 110], filed pursuant to FED. R. CRIM. P. 12(b)(3)(C). The government filed a response to the motion [Doc. No. 120].

On June 24, 2026, the Court held an evidentiary hearing at which Defendant appeared personally and through appointed counsel, Andrew Casey. The government appeared through Assistant United States Attorney Thomas Snyder, and presented one witness, Agent Justin Taylor with the Oklahoma Bureau of Narcotics (OBN). The government submitted four videos along with its brief. Two of the videos, Exhibit 2, a video recording made by Agent's Taylor's body camera, and Exhibit 3, a video recording made by his dash camera, were also introduced at the hearing [Doc. Nos. 120-2, 120-3]. The Court viewed the videos in their entirety. The Court took the motion under advisement. Upon consideration of the evidence, the case record, and the parties' arguments, the Court finds and rules as follows.

1

**FINDINGS OF FACT**

The Indictment charges in Count 1 that from in or about January 2025, and continuing thereafter through on or about February 3, 2025, Defendant knowingly and intentionally conspired to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and in Count 2 possessed methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendant moves to suppress any fruits from the search of the rental car Defendant was a passenger in during a traffic stop.

On February 3, 2025, at around 10:30 p.m., Agent Taylor with OBN was patrolling on Interstate 40 in Canadian County, Oklahoma, near mile marker 116, when he saw a car with an out-of-state license plate suddenly hit its brakes. Although this alone was not a traffic violation, he began following the car.[1] After a few minutes, he witnessed the passenger side tires of the car ride the right-hand fog line three separate times in violation of 47 OKLA. STAT. tit. 47, § 11-309.[2] He pulled the car over and, upon approaching the vehicle, noticed several large, heavily taped boxes in the back of the car; a large trash bag; several suitcases; multiple cell phones; and signs of hard travel—Agent Taylor identified these items as indicators of drug trafficking. Most importantly, when Defendant—who was in the passenger seat of the vehicle—rolled down his window, Agent Taylor testified that he immediately smelled both raw and burnt marijuana.

---

[1] At this point he confirmed the car was a rental by running the license plate through his computer system.

[2] Agent Taylor's dash camera showed the car riding the fog line twice on video, the first time occurred before the camera was activated.

Agent Taylor had the driver of the car, Kayla Melton, join him in his patrol car while he conducted law enforcement checks and issued her a warning for the traffic violation. The two engaged in general small talk during this time, but Agent Taylor began noticing inconsistencies in Ms. Melton and Defendant's stories. For example, Ms. Melton stated that they had travelled to Oklahoma from New Mexico while Defendant stated they had travelled from California. And Ms. Melton stated they were there for a couple of days while Defendant stated they were there for ten days. Notably, Ms. Melton stated that Defendant was her uncle, but Defendant stated that Ms. Melton was his girlfriend.

When asked about the rental car, Ms. Melton stated that she was unsure who rented it, so Agent Taylor went back to the car to ask Defendant about it. Once again, upon approaching the car, Agent Taylor was met with the smell of marijuana.[3] Defendant explained that his brother rented the car, but he did not have the rental agreement.

After questioning Defendant, Agent Taylor returned to his patrol car and asked Ms. Melton if there was marijuana in the car, which she denied. He then asked whether anyone had smoked in the car to which she responded that she smoked at the last stop. When asked for consent to search the vehicle, Ms. Melton declined, but Agent Taylor conducted the search anyway pursuant to his belief that probable cause was present.[4] Eventually, Agent Taylor's partner arrived on the scene and the two conducted the search. The following items

---

[3] He testified that the second time he approached the car, he did not distinguish whether the smell came from burnt or raw marijuana.

[4] Agent Taylor testified that he believed he had probable cause to search the car approximately two and a half minutes into the encounter due to the odor of marijuana, but continued to conduct the traffic stop and other related tasks before doing so.

were found in the vehicle: 3 boxes containing 140 pounds of methamphetamine, $14,000 of U.S. currency, 3 cell phones, loose marijuana, a small baggie of cocaine, 8 pounds of marijuana, and 5 pounds of THC vapes.

## CONCLUSIONS OF LAW

"Under the Fourth Amendment, searches and seizures must be reasonable." *United States v. Torres*, 987 F.3d 893, 901 (10th Cir. 2021) (citing *United States v. Gomez-Arzate*, 981 F.3d 832, 838 (10th Cir. 2020)). "A traffic stop . . . constitutes a 'seizure' under the Fourth Amendment and is subject to review for reasonableness." *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020) (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996)). "[T]he government bears the burden of proving the reasonableness of a . . . seizure." *United States v. Kitchell*, 653 F.3d 1206, 1216 (citing *United States v. Chavez*, 534 F.3d 1338, 1343 (10th Cir. 2008)).

### I.    The Traffic Stop

"A traffic stop must be justified at its inception and, in general, the officer's actions during the stop must be reasonably related in scope to 'the mission of the stop itself.'" *United States v. Cone*, 868 F.3d 1150, 1152 (10th Cir. 2017) (citing *Rodriguez v. United States*, 575 U.S. 348, 356 (2015)).

### i.    Justified at its Inception

"A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *Kitchell*, 653 F.3d at 1216 (quoting *United States v. Winder*, 557 F.3d 1129,

4

1134 (10th Cir. 2009)); *see also United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003) (citing *United States v. Callarman*, 237 F.3d 1284, 1286 (10th Cir. 2001)) ("A traffic stop is justified at its inception if it is based on an observed traffic violation.").

In Oklahoma, "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic, . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane." 47 OKLA. STAT. tit. 47, § 11-309. The Tenth Circuit has emphasized that there is not "an absolute standard or bright-line rule regarding what conduct constitutes a violation of statutes like [47 OKLA. STAT. tit. 47, § 11-309], but instead highlight[s] the need to analyze objectively all the surrounding facts and circumstances to determine whether the officer had the probable cause necessary to justify the stop." *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999).

Defendant argues the traffic stop was not justified at its inception because the statute requires a driver to keep the vehicle within the lane "as nearly as practicable." He contends that, given the windy conditions, the car was driven as nearly as practicable within the lane.[5]

Agent Taylor testified that he observed the passenger-side tires of the car driven by Ms. Melton ride the fog line three separate times. His testimony is supported by footage from his dash camera that was introduced into evidence as Exhibit 3.[6] At a minimum, Agent

---

[5] Although Defendant argues that it was windy, therefore making it difficult to drive the car within the lane the entire time, neither party introduced evidence regarding the speed or direction of the wind.

[6] Agent Taylor testified that he saw the car's passenger-side tires ride on top of the fog line three separate times; the dash camera footage only shows two instances because the dash camera was activated after the first instance occurred.

Taylor's observations were "sufficient to create a reasonable suspicion that [Defendant] might be sleepy or impaired, and could present a risk of harm to himself or others." *Ozbirn*, 189 F.3d at 1199 (citations omitted). Accordingly, the Court finds the traffic stop was justified from its inception.

### ii.     Reasonably Related in Scope to the Mission of the Stop Itself

"An officer's authority to seize a driver 'ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.'" *Mayville*, 955 F.3d at 830 (citing *Rodriguez*, 575 U.S. at 354). "[A]n officer's mission during a traffic stop is both 'to address the traffic violation that warranted the stop and attend to related safety concerns.'" *Id.* (emphasis omitted). "[T]his mission 'includes ordinary inquiries incident to' the traffic stop, which typically involve inspecting the driver's license, verifying the vehicle's registration and insurance coverage, and checking for any outstanding warrants against the driver." *Id.* (citing *Rodriguez*, 575 U.S. at 355).

"An officer may conduct certain unrelated inquiries during the stop, but he may not do so in a way that prolongs it absent the reasonable suspicion ordinarily required to detain an individual." *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022). "Reasonable suspicion requires a 'particularized and objective basis for suspecting criminal conduct under a totality of the circumstances.'" *Id.* at 1174 (quoting *United States v. Cortez*, 965 F.3d 827, 834 (10th Cir. 2020)).

Defendant argues that Agent Taylor impermissibly prolonged the search. The Court disagrees. From the moment Agent Taylor pulled the car over, his actions were reasonably related to the scope of the mission of the stop—conducting checks to run Ms. Melton's

license number and attempting to locate the rental agreement for the car. But even if these checks were not reasonably related, once Agent Taylor smelled the odor of marijuana the first time he approached the car, he had "reasonable suspicion to believe that [Defendant] was violating the federal drug laws' prohibition against the possession of marijuana." *Torres*, 987 at 903; *see also United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993) ("The smell of burnt marijuana [alone] would lead a person of ordinary caution to believe the passenger compartments might contain marijuana."). Thus, the traffic stop was justified at its inception and reasonable suspicion existed for Agent Taylor to prolong the traffic stop.

## II.    Probable Cause to Search the Vehicle

"Under the automobile exception to the Fourth Amendment's warrant requirement, 'police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.'" *United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005) (quoting *Florida v. Meyers*, 466 U.S. 380, 381 (1984)). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001) (quoting *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998)).

"An officer's detection of the smell of drugs . . . in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000). "The scope of a warrantless search of an automobile 'is defined by the object of the search and the

places in which there is probable cause to believe that it may be found.'" *Nielsen*, 9 F.3d at 1491 (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). "[A]n officer obtains probable cause to search the trunk of a vehicle once he smells marijuana in the passenger compartment and finds corroborating evidence of contraband." *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995) (emphasis omitted).

As discussed above, Agent Taylor smelled marijuana coming from the car both times he approached it. He testified that the first time he approached the car, he smelled both burnt and raw marijuana; the second time, he did not distinguish whether he smelled burnt or raw marijuana. Further, he saw several items in the car that were indicators of drug trafficking, noted several inconsistences in the stories told by Ms. Melton and Defendant,[7] and Ms. Melton admitted to smoking marijuana during one of their stops.

The smell of raw marijuana alone gave rise to probable cause for Agent Taylor to search the car, including the boxes in the cargo area.[8] *See Downs*, 151 F.3d at 1303 (citation omitted) ("When . . . an officer encounters, as was the case here, the overpowering smell of raw marijuana, there is a fair probability that the car is being used to transport large quantities of marijuana and that the marijuana has been secreted in places other than the passenger compartment. Accordingly, in such circumstances, a search of the trunk is appropriate."). But even if Agent Taylor only smelled burnt marijuana, considering the

---

[7] The Court notes that although their stories regarding their travel plans may not be entirely inconsistent, Ms. Melton calling Defendant her uncle when he called Ms. Melton his girlfriend are clearly inconsistent statements.

[8] The car involved was an SUV-style vehicle, with a back cargo area, but not a conventional, enclosed trunk.

totality of the circumstances here, the Court is still satisfied that probable cause existed for him to search the car. *See United States v. Jackson*, 2026 WL 913721, at *2-3 (affirming the finding of probable cause based on the smell of burnt marijuana, inconsistent travel stories, extreme nervousness, and criminal history);[9] *see also West*, 219 F.3d at 1178-79 (affirming the finding of probable cause based on the smell of methamphetamine, strong odor of air freshener, extreme nervousness, and prior criminal offenses). Agent Taylor smelled marijuana both times he approached the car; saw suitcases, a trash bag, and heavily taped boxes in the cargo area—he testified that the amount of tape on the boxes was more consistent with drug trafficking than moving boxes; and the car contained signs of hard travel—items seemed to be thrown into the car and it was cluttered. Accordingly, Agent Taylor had probable cause to search the vehicle.

## ORDER

**IT IS THEREFORE ORDERED** that Defendant James Alvin Hudson's Motion to Suppress Traffic Stop [Doc. No. 110] is **DENIED**.

**IT IS SO ORDERED** this 6th day of July, 2026.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[9] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).